IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

C.B., by and through his mother, N.B )                Civ. No. 10-00317 DAE/LEK
                                      )
              Plaintiffs,             )
                                      )
       vs.                            )
                                      )
STATE OF HAWAII,                      )
DEPARTMENT OF EDUCATION,              )
                                      )
              Defendant.              )
_____      )


<u>ORDER AFFIRMING DECISION OF HEARINGS OFFICER</u>

On December 13, 2010, the Court heard Plaintiffs' appeal of a

decision rendered by an administrative hearings officer concerning the denial of a

student's individualized education program.  Jennifer V. Patricio, Esq., and John P.

Dellera, Esq. appeared at the hearing on behalf of Plaintiffs, Deputy Attorney

General Joanna B.K.F. Yeh appeared at the hearing on behalf of Defendant

Department of Education ("Defendant").  After reviewing the appeal, and the

supporting and opposing briefs, the Court AFFIRMS the Hearings Officer's

Findings of Fact, Conclusions of Law and Decision.

BACKGROUND

I.     Factual Background

Petitioner C.B. is a twenty-one year old student who has been diagnosed with Disruptive Behavior Disorder, Autistic Disorder, Obsessive Compulsive Disorder, Mild Mental Retardation and Seizure Disorder. (Doc. # 29, Pl.'s Opening Br. ("P's Brief"), 2.)  In the 2008-2009 school year, C.B. received special education and related services under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (Doc. # 16, Rec. Appeal ("ROA"), Ex. 23, 164.)  C.B. was home schooled during the summer of 2009.  (Id.)

On June 21, 2009, C.B. turned 20.  (Id.)  Two days later C.B.'s continued eligibility for special education under IDEA was discussed at an Individualized Education Program ("IEP") eligibility meeting.  (Id.)  On June 26, 2009, the DOE issued a Prior Written Notice ("PWN") denying an additional year of special education services.  (Doc. # 17, Pet. Exs. ("PET"), Ex. 12, 257.)  The Prior Written Notice denied the services because:

> [C.B.] turned 20 years old on June 21, 2009.  He will complete the extended school year program on July 24, 2009.  Pursuant to H.A.R. § 8-56-15 (paragraph 3 (a)), a student meets the eligibility requirements when the student is '(B) under twenty on the first instructional day of the school year set by the department."  The first day of school year for 2009-2010 is August 3, 2009.  He has the

2

functional and academic skills necessary for transition to the
noncompetitive work force.

(Id.)

Thereafter, C.B, by and through his mother, N.B., (collectively

"Plaintiffs") filed an Impartial Due Process Hearing Request on July 23, 2009.

(Doc. # 16, ROA, Ex. 1, 1.)  The Plaintiffs argued that the denial violated IDEA

and "is contrary to clearly established law."  (Id. at 3.)  Specifically, Plaintiffs

alleged that the decision violated B.T. v. Department of Education, 637 F. Supp. 2d

856 (D. Haw. 2009), in which this Court enjoined the State of Hawai'i from

implementing a *per se* rule denying special education services based solely on a

student attaining the age of 20.  Id. at 866.

Plaintiffs also filed a Motion for A Stay Put Order during the

pendency of the Administrative Hearing.  (Doc. # 16, ROA, Ex. 9, 64.)  On Sept.

14, 2009, there was a hearing on this latter motion and it was granted two days

later.  (Id.)  Stay Put has been in effect since September 16, 2009 and C.B. remains

in educational placement to date.  (Doc. # 34, Def.'s Answering Br. ("D's Brief"),

3.)

II.   <u>Hearings Officer's Decision</u>

The Administrative Due Process hearing was conducted from March 29, 2010 through April 1, 2010.  (Doc. # 16, ROA, Ex. 23, 163.)  The Hearings Officer dismissed Plaintiffs' allegations and claims for relief, ultimately concluding that

> the [Plaintiffs] have not shown that [C.B.] continues to require special education services due to his behavioral/emotional needs, lack of social skills; and needs for safety training, improvement of daily living skills and functional academic skills as specified in his IEP.

(<u>Id.</u> at 174.)

In reaching this decision, the Hearings Officer considered the testimony of a parent advocate as an expert in IEPs and transition and considered the advocates testimony that Student was progressing or emerging in language arts, math, and other goals.  (<u>Id.</u> at 167.)  The Hearings Officer also considered the testimony of special education teacher Z.S., who testified that student was progressing or emerging in his goals.  (<u>Id.</u>)  Notably, Z.S. also opined that it was time for  C.B. to leave the school environment.  (<u>Id.</u>)  The Hearings Officer also heard from a paraprofessional aide.  (<u>Id.</u> at 169.)

Despite this testimony, the Officer decided that an autism consult teacher ("ACT") was "[t]he person best able to testify about whether [C.B.]

continue[d] to need the special education services offered at the home school." (Id. at 172.)  This was because the ACT had been C.B.'s special education teacher for five years and had a longstanding familiarity with C.B.[1]  (Id.)  The Hearings Officer found the ACT testified that C.B. had "plateaued and was not making a significant amount of educational progress." (Id.)  This lead the Hearings Officer to determine that C.B.'s "level of independence is pretty well set," id., and ultimately concluded that the Plaintiffs' claims should be dismissed.  (Id. at 174.)

Indeed, during his testimony, the ACT on multiple occasions testified that C.B. had plateaued.  First, the ACT testified as to Respondent's Exhibit 21, specifically the graph representing C.B's performance relating to personal space.  (Doc. # 19, Resp't Exs. ("RET"), Ex. 21, 560.)  The ACT testified that

> the trend line is that straight line . . . it looks pretty much like a flat trend line . . . .  So if there's a flat trend line, then that means that the student has pretty much plateaued and is no longer making a significant amount of progress. . . . [W]hen I look at this graph, what it tells me is that [C.B.] . . . seems to have plateaued on that objective.

(Doc. # 22, Tr., Vol. III, 277.)  The ACT then turned to another graph in Respondent's Exhibit 21, this time the graph relating to counting and writing numbers up to fifty.  (Doc. # 19, RET, Ex. 21, 558.)  The ACT testified with

---

[1]This is in contrast to the parent advocate, who had observed C.B. once at his home and asked C.B's teacher only one question during the observation.  (Doc. # 21, Tr., Vol. II, 59-60.)

respect to this graph that C.B. "ha[d] stopped making progress and kind of reached a point where [he is] no longer making progress in that particular objective."[2] (Doc. # 22, Tr., Vol. III, 279.)  Finally, on cross-examination, Counsel for Plaintiffs asked specifically whether he believed "that [C.B.] can progress any more educationally at Kailua High School based on your experience with him as well as your expert opinion."  (Id. at 291.)  The ACT responded:

> It would be educationally unethical for any teacher to say that any kid [could not] progress.  But with that being said, I think that [C.B.] has reached a level where [he has] plateaued in a lot of areas and that he is ready to be part of the noncompetitive workforce.

(Id.)

The Hearings Officer also rejected Plaintiffs' contention that the PWN was a *per se* denial of benefits as prohibited in B.T..  He so concluded because the PWN denied further benefits not only because C.B. had turned twenty but also because C.B. had the functional and academic skills necessary for transition into the noncompetitive workforce.  (Doc. # 16, ROA, Ex. 23, 171-72.)

---

[2]The Court also notes that the majority of graphs in Respondent's Exhibit 21 show flat or near flat trend lines.  (See Doc. # 19, RET, Ex. 21, 554-71.)  Each of these exhibits was created by the ACT or someone under his supervision.  (Doc. # 22, Tr., Vol. III, 274.)

III.   <u>Procedural History</u>

During the 2008-2009 school year, C.B. was eligible for benefits pursuant to IDEA.  (<u>Id.</u> at 3.)

On June 21, 2009, C.B. turned twenty.  (<u>Id.</u>)

On June 23, 2009, an IEP eligibility meeting took place in which C.B.'s continued eligibility for benefits under IDEA was discussed.  (<u>Id.</u>)

On June 26, 2009, the PWN denying continued benefits under IDEA was issued (<u>Id.</u>)

On July 23, 2009, Plaintiffs filed their Request for an Impartial Hearing challenging the PWN.  (<u>Id.</u>)

On August 19, 2009, Plaintiffs filed a Motion for A Stay Put Order During the Pendency of the Administrative Hearing.  (<u>Id.</u>, Ex. 9, 64.)

On September 16, 2009, the Hearings Officer granted Plaintiffs' Motion for A Stay Put Order.  (<u>Id.</u> at 67.)

From March 29, 2010 to April 1, 2010, the Impartial Hearing took place.  (<u>Id.</u>, Ex. 23, 165.)

On May 6, 2010, the Hearings Officer concluded that Plaintiffs were not entitled to relief.  (<u>Id.</u> at 162.)

7

On June 2, 2010, the Plaintiffs filed their Complaint for Declaratory and Injunctive Relief.  (Doc. # 1.)

On July 26, 2010, the Defendant answered.  (Doc. # 14.)

On October 11, 2010, Plaintiffs filed their Brief.  (Doc. # 29.)

On November 11, 2010, Magistrate Kobayashi denied Plaintiffs' Motion for Stay of Proceedings.  (Doc. # 33.)

On November 12, 2010, Defendant filed its Brief (Doc. # 34.)

On November 29, 2010, Plaintiffs filed their reply.  (Doc. # 35.)

## STANDARD OF REVIEW

The IDEA states, *inter alia*:

> [a]ny party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

When a party files an action challenging an administrative decision under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as

the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); see also Ojai

Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993).  The party

challenging the administrative decision bears the burden of proof.  See Seattle Sch.

Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Hood v. Encinatas Union

Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007).

      "[J]udicial review in IDEA cases differs substantially from judicial

review of other agency actions, in which courts generally are confined to the

administrative record and are held to a highly deferential standard of review."  Ojai

Unified Sch. Dist., 4 F.3d at 1471.  District courts have discretion concerning how

much deference to give to state educational agencies.  Gregory K. v. Longview

Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  Courts need not follow the

traditional test that findings are binding if supported by substantial evidence or

even a preponderance of the evidence.  Id.  A court may not, however, simply

ignore the administrative findings.  Ojai Unified Sch. Dist., 4 F.3d at 1474.  Given

the expertise of the administrative agency and the political decision to vest the

initial determination with the agency, deference to the hearing officer is warranted

in cases where the officer's findings are "careful and thorough."  Id. (citing

Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)); Capistrano v. Unified

Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  In the end, district

courts are free to determine how much deference to accord decisions of a hearing officer in light of the circumstances.  County of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).  However, "the ultimate determination of whether an IEP was appropriate is reviewed *de novo*.  A.M. v. Monrovia Unified Sch. Dist. __ F.3d __, Nos. 09-55169, 09-55478, 2010 WL 5095524, at * 3 (9th Cir. Dec. 15, 2010).

## DISCUSSION

Plaintiffs raise three issues on appeal: (1) Whether the Plaintiffs or Defendant had the burden in front of the Hearings Officer; (2) Whether the Defendant could terminate IDEA benefits without an evaluation pursuant to 34 C.F.R. §§ 300.304-300.311; (3) Whether the Hearings Officer correctly dismissed the Plaintiffs' allegations and claims for relief.[3]

---

[3]Also briefed by the parties is a recently passed Hawaiian statute, Act 163. Act 163 amended Haw. Rev. Stat § 302A-1134(c) to impose a twenty year age limit on all admissions to public high school.  See Haw. Rev. Stat. § 302A-1134(c). Plaintiffs argue that Act 163 was passed to reverse this Court's decision in B.T. and argues that, not withstanding Act 163, B.T. remains good law.  (Doc. # 29, P's Brief, 10-11.)  Defendant takes the position that Act 163 is not relevant because it was not effective until July 1, 2010, two months after the Hearing Decision and one year after C.B.'s IEP meeting.  (Doc. # 34, D's Brief, 19-20.)  Further, Act 163 is also at issue in pending litigation before the Court in R.P.-K. v. Department of Education, CV 10-00436 DAE-KSC.  Given this concession by Defendant, the Court need not now consider its applicability in the instant case.

I.      Burden in front of Hearings Officer

        The parties disagree as to which party had the burden in front of the

Hearings Officer.  Plaintiffs contend that the burden was on the Defendant to

demonstrate that C.B. would not benefit from further IDEA services.  See B.T.,

637 F. Supp. 2d at 866 (noting that the Court would not usurp the IEP team's

responsibility of determining whether "a student would benefit from more

services").  Plaintiffs argue Defendant had this burden because there is nothing in

IDEA " 'which requires as a prerequisite to being covered by the Act, that a

handicapped child must demonstrate that he or she will benefit from the

educational program.' "  (Doc. # 29, P's Brief, 21 (quoting Timothy W. v.

Rochester, N.H. School Dist., 875 F.2d 954, 960-61 (1st Cir. 1989).)  Defendant

relies on the Supreme Court's recent decision in Schaffer v. Weast, 546 U.S. 49

(2005), in which the Court placed the burden on the party challenging the adequacy

of an IEP plan.  Id. at 61-62.  Plaintiffs counter by noting that in Schaffer, the

Court held "no more than [neccesary] to resolve the case at hand" and that at issue

is not the adequacy of an IEP plan but the decision not to provide C.B. with *any*

benefits under IDEA.  See id. at 61.  Plaintiffs also point to another district court's

decision to confine Schaffer to its facts and place the burden on the State to justify

its decision not to provide benefits per IDEA at the administrative hearing level.

11

See M.B. and K.H. v. South Orange/Maplewood Bd of Educ., 2010 WL 3035494, 90-5294(SRC), at *6 (D. N.J. Aug. 3, 2010).

Before Schaffer, it was settled law in the Ninth Circuit that "[t]he School District [has] the burden of proving compliance with the IDEA at the administrative hearing." Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996). Since Schaffer, the Ninth Circuit has had only one opportunity to comment on the burden under IDEA at the administrative hearing. See Van Duyn v. Baker School Dist. 5J, 502 F.3d 811 (9th Cir. 2007). In Van Duyn, the court focused on the following language in Schaffer:

> "[T]he ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims, . . . [a]bsent some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief."

Id. at 820 (quoting Schaffer, 546 U.S. at 535). The Ninth Circuit ultimately concluded that the burden scheme contemplated in Schaffer should be expanded to include challenges to the *implementation* as well as well as adequacy of an IEP plan. Id.

In any event, the Court here need not reach this issue. Even assuming that the burden was on the Defendant at the administrative level to demonstrate

12

that the C.B. would not benefit from further education, there is sufficient evidence to warrant a finding that Defendant satisfied this burden, as discussed *infra*.[4]

## II.   Termination of Special Education and Related Services

As a general rule, arguments not raised in front of a hearings officer cannot be raised for the first time on appeal to the district court.  Indeed, "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required." Robb v. Bethel Sch. Dist. # 403, 308 F.3d 1047, 1048 (9th Cir. 2002); see also 20 U.S.C. § 1415(i)(2)(A); J.L. v. Mercer Island School Dist., 575 F.3d 1025, 1038

---

[4]Although not necessary to resolve this case, this Court is inclined to agree with Plaintiffs that the burden was on the Defendant at the administrative level because there is clear congressional language that would indicate it was intended to be.  See Schaffer 546 U.S. at 535 ("Absent some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief.") As the First Circuit stated, there is nothing in IDEA "which requires as a prerequisite to being covered by the Act that a handicapped child must demonstrate that he or she will benefit." Timoth W., 875 F.2d at 960-61.  Instead, "the act speaks of the state's responsibility to design a special education and related services program." Id.  Here challenged is not the means or method of providing a benefit under IDEA but instead whether C.B. is entitled to any benefit at all.  This is qualitatively different than what the Supreme Court decided in Schaffer and this Court believes that the Ninth Circuit's default rule that the burden at the administrative level falls on the Defendant should apply in the instant case.  See Seattle School Dist., 82 F.3d at 1498; see also M.B. and K.H., 2010 WL 3035494, at *6 ("[Not withstanding Schaffer,] the Court holds that the School District bears the burden of demonstrating that it complied with the IDEA in deeming J.B. to be ineligible for special education services.").

(9th Cir. 2009).  Exhaustion is not required, however, if it would be futile or offer

inadequate relief, or if the agency has adopted a policy of general applicability that

is contrary to the law.  N.D. v. Hawaii Dept. of Educ., 600 F.3d 1104, 1110 (9th

Cir. 2010).  Here there is not a scintilla of evidence that Plaintiffs raised in front of

the Hearings Officer Defendant's failure to evaluate C.B. in accordance with 34

C.F.R. §§ 300.304-300.311 as a grounds for relief.  Indeed, nowhere in their

opening brief before the Hearings Officer did Plaintiffs mention the Defendant's

failure to evaluate as a grounds upon which relief was sought.  (See Doc. # 16,

ROA, Ex. 16, 93-103.)  Nor is it mentioned in Plaintiffs' closing arguments.  (Id.,

Ex. 19, 113-37.)

Plaintiffs rely on B.T. v. Department of Education, 676 F. Supp. 2d

982 (D. Haw. 2009) (hereinafter B.T. II) to argue that "Defendant's failure to

properly evaluate C.B. is evidence of its denial of [a free and public education,] not

a stand alone issue that must be set forth separately in the due process request."

(Doc. # 35, Pl.'s Reply Br. ("P's Reply"), 6-7.)  Plaintiffs' reliance is misguided.

In B.T. II, the Court noted:

> After a careful review of the administrative record, this Court
> concludes that Plaintiff did *sufficiently raise* the matter of regression,
> not as a stand alone issue, but as part of Plaintiff's argument that DOE
> frustrated B.T.'s placement at Heartspring.  B.T.'s "regression" *was*
> *submitted as evidence* to support Plaintiff's allegation that B.T. was

> denied FAPE by DOE's alleged acts in bad faith relating to the
> services B.T. received at Heartspring.

Id. at 989 (emphasis added).  Thus, while it is true that to avoid waiver an issue

may be raised as evidence of a denial of a free and public education ("FAPE")

rather than as a separate claim for relief, it must still be somehow raised at the

administrative level.  Unlike in B.T. II, where evidence of B.T.'s regression was

submitted in support of the  Plaintiffs' argument that B.T. was denied a FAPE, here

the Defendant's failure to comply with 34 C.F.R. §§ 300.304-300.311 was not

raised in front of the Hearings Officer as evidence in support of an argument or

otherwise.

Plaintiffs' final argument that "Defendant's obligation to evaluate

C.B. involves purely legal questions, which need not be exhausted at the

administrative level" also fails.  (Doc. # 35, P's reply, 7 (citing Pihl v.

Massachusetts Dept. of Educ., 9 F.3d 184, 190 (1st Cir. 1993).)  The law in the

Ninth Circuit is clear, "when a plaintiff has alleged injuries that could be redressed

to any degree by the IDEA's administrative procedures and remedies, exhaustion

of those remedies is required."  Robb, 308 F.3d at 1048.  There is little question

that had this issue been raised in front of the Hearings Officer the injury of which

Plaintiffs complain could have been redressed; the Hearings Officer could have

required the Defendant to conduct an evaluation.  Nor have Plaintiffs demonstrated that exhaustion in this case would be futile, offer inadequate relief, or that the Defendant has adopted a policy or pursued a practice of general applicability that is contrary to law.  See N.D., 600 F.3d at 1110.  Plaintiffs' argument is therefore waived.

Indeed, even if the First Circuit's decision in Pihl was applicable here, whether Defendant complied with 34 C.F.R. §§ 300.304-300.311 is not purely a legal question.  The question would not be merely whether the Defendant was required to conduct an evaluation but also whether the procedures the Defendant followed sufficed.  Indeed, Defendant here contends "[t]here was no need for *further* evaluation of C.B. because there was sufficient data, observations, and information to make the determination that C.B. was ready to transition and did not require further special education and related services."  (Doc. # 34, D's Brief, 21-22 (emphasis added).)  In essence, the Court would be required to make more than just a purely legal determination.  Therefore the Court finds that Plaintiffs have waived the argument that Defendant failed to evaluate C.B. pursuant to 34 C.F.R. §§ 300.304-300.311.

III.   Whether the Hearings Officer Properly Dismissed Plaintiffs' Claims for Relief

The IDEA states a FAPE is available to all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ."  20 U.S.C. § 1412(a). Federal eligibility for special education and related services end when a student becomes twenty-two.  B.T., 637 F. Supp. 2d 856, 863 n.9.  "The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children-(i) aged . . . 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B).  Thus, a court will look both to state law and state practice to determine whether a state must provide a FAPE to children with disabilities per IDEA.

In B.T., this Court determined that "because Hawaii schools provide education through 21 years old for general education students, it must provide a FAPE for overage special education students when the IEP so recommends."  637 F. Supp. 2d 856, 866.  This Court was also clear, however, it was

> *not* saying that in every case, in every instance, Hawaii schools must provide educational services to disabled students through 21 years old. The IDEA leaves a student's IEP team with the primary responsibility for developing and implementing educational programs for disabled

17

> students and allows IEP teams to provide special education and
> related services in the manner and location that they consider
> appropriate. 20 U.S.C.A. § 1414(d). This Court will not usurp that
> role in deciding when a student would benefit from more services.

Id. (emphasis in original).  Hawai'i was therefore "enjoined from implementing a

*per se* rule denying special education services based solely on their attaining the

age of 20."  Id.

Plaintiffs' argument that C.B. is being denied a FAPE on a *per se*

basis in violation of B.T. is misplaced.  The Hearings Officer specifically found

that the PWN was not based solely on the fact that he attained an age of twenty.

He also found that C.B. had "plateaued and was not making a significant amount of

educational progress from the middle of 2008 to the middle of 2009."   (Doc. # 16,

ROA, Ex. 23, 175.) As noted, this conclusion was based largely on the testimony

of the ACT.   (See id.)  The Hearings Officer not only rejected the *per se* argument

but also bolstered the PWN's determination by concluding that C.B. had plateaued

in his performance.[5]

_____

[5]Plaintiffs also here argue that the Hearings Officer erred in excluding
evidence relating to: (1) the number of students aged 20-22 enrolled in high school
equivalency programs; (2) a Defendant representative's declaration that she was
not aware of any special education and related services in that program; (3)
Defendant's two high school equivalency programs; and (4) Defendant's
representation to the Secretary of Education when it applied for IDEA funding.
(Doc. # 29, P's Brief, 5-6.) Plaintiffs argue it proffered this evidence in an attempt

(continued...)

Nor does the Court understand Plaintiffs' estoppel argument.  Judicial estoppel is "the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals."  Poweragent v. Electronic Data Systems, 358 F.3d 1187, 1192 (9th Cir. 2004).  The doctrine may also apply where the prior statement was made in an administrative proceeding or to an administrative agency.  See Risetto v. Plumbers and Stemfitters Local 343, 94 F.3d 597, 604 & n.4 (9th Cir. 1996); UNUM Corp. v. United States, 886 F. Supp. 150, 158 (D. Me. 1995)

Plaintiffs here complain that Defendant, in its application for IDEA funding, represented that:

A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21 . . . .

(Doc. # 17, PET, Ex. 25, 336).  Defendant, Plaintiffs allege, "now takes a contrary position on exactly the same issue before a federal court in an effort to avoid

---

[5](...continued)
to demonstrate that C.B. "has a right to FAPE to age 22."  (Doc. # 35, P's Reply, 7).  As this Court noted in B.T., disabled children are entitled to receive benefits provided the IEP team recommends so.  637 F. Supp. 2d at 866.  Plaintiffs have not articulated clearly what the additional evidence would help demonstrate other than what B.T. has already established.  Further, Plaintiffs have not explained how this evidence tends to show C.B. here has a right to a FAPE.  Plaintiffs seem to want to use this evidence to attack Act 163, but, as noted, Defendant has already conceded that Act 163 is not applicable in the instant action.  Therefore, the Hearings Officer correctly excluded this evidence.

spending those funds as represented." (Doc. # 29, P's Brief, 16.)  The problem is Defendant nowhere argues to the Court that it may deny a FAPE to disabled children within that age range on a *per se* basis.  To the extent that Act 163 attempts to do that, the Defendant has agreed not to rely on it.  Plaintiffs cannot point to one instance of Defendant arguing that a FAPE can be denied in front of this Court in the instant action.  Further, to the extent Defendant did argue this in front of the Hearings Officer, it has since abandoned the argument.  Simply put, Defendant makes here no argument on these grounds that the Court can estop.

Plaintiffs also argue that "Defendant sets an unreasonably low standard for C.B.'s right to a [FAPE]" when Defendant argues that the Hearings Officer correctly determined that C.B. could transition into "noncompetitive employment." (Doc. # 16, ROA, Ex. 23, 174.)  Instead, as noted, Plaintiffs argue that the standard should be whether a student would benefit from more services. (Doc. # 35, P's Reply, 2.)

"The IDEA leaves a student's IEP team with the primary responsibility for developing and implementing educational programs for disabled students and allows IEP teams to provide special education and related services in the manner and location that they consider appropriate." B.T., 637 F. Supp. 2d at 866 (citing 20 U.S.C. § 1414(d)).  Here, the IEP team set a goal for C.B. to be

employed.  (Doc. # 18, RET, Ex. 10, 164.)  C.B. achieved that goal when he

became a member of the noncompetitive workforce.  (Doc. # 16, ROA, Ex. 23,

167.)  <u>B.T.</u> makes clear that it is not the Court's role to usurp the IEP's role in

developing and implementing educational programs for disabled students.  Here

Defendant determined that C.B. had achieved his set goal of employment and

declined to provide further education within its rights.

Even assuming the burden was on the Defendant at the administrative

level to demonstrate that C.B. could no longer benefit from further education as

Plaintiffs contend, there was sufficient evidence to warrant such a finding.[6]  The

Hearings Officer carefully and thoroughly reviewed the evidence, including the

testimony and evidence of both parties.  (<u>Id.</u> at 165-69.  While cognizant that it is a

court's duty to review *de novo* whether an IEP was appropriate, the Court here

determines the findings and conclusions of the Hearings Officer are entitled to

deference.  See <u>A.M.</u>, 2010 WL 5095524 at *3; <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at

1474 (citing <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988));

---

[6] For the first time at the hearing, counsel for the Plaintiffs suggested that the "benefit" standard is also impermissible.  This is because non-disabled students aged eighteen to twenty-one need not demonstrate that they would benefit to be entitled to an education.  Plaintiffs had not earlier raised this argument; it is therefore waived.  See <u>Robb</u> 308 F.3d at 1048 ("[W]hen a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required.")

Capistrano v. Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).

The Hearings Officer determined that the ACT was "the person best able to testify

about whether [C.B.] continue[d] to need the special education services."  (Doc. #

16, ROA, Ex. 23, 172.)  Relying largely, but not exclusively, on the ACT's

testimony,[7] the Hearings Officer concluded that C.B. plateaued and would not

make "further educational gains."  (Id. at 173.)  Indeed the ACT thrice opined that

C.B. had plateaued, including once in direct response to Counsel for Plaintiffs'

broad question asking whether he believed "that [C.B.] can progress any more

educationally at Kailua High School based on your experience with him as well as

your expert opinion."  (Id. at 291.)  In light of the deference to which the Court

finds the Hearings Officer's decision is entitled as well as the evidence before the

Officer, the Defendant, assuming he had a burden in the administrative hearing,

satisfied it.  Therefore the Court **AFFIRMS** the decision of the Hearings Officer.

---

[7]The Hearings Officer also relied upon the testimony of Z.S. who opined it
was time for C.B. to leave the school environment.  (Doc. # 16, ROA, Ex. 23, 172.)
The Officer also noted that another special education teacher's opinion that C.B.
was social (Id. at 169.)

<u>CONCLUSION</u>

For the reasons stated above, the Court **AFFIRMS** the Decision of

Hearings Officer.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 22, 2010.



_____
David Alan Ezra
United States District Judge

<u>C.B. v. Department of Education,</u> Civ. No. 10-00317 DAE/LEK; ORDER
AFFIRMING DECISION OF HEARINGS OFFICER.